# UNITED STATES DISTRICT COURT
## District of Kansas
### (Wichita Docket)

~~FILED~~
U.S. District Court
District of Kansas

NOV 1 3 2018

**UNITED STATES OF AMERICA,**

**Plaintiff,**

Clerk, U.S. District Court
By_____ *(signature)* _____ Deputy Clerk

**v.**

**TYLER R. BARRISS,**

**Defendant.**

**CASE NOS. 18-10065 -01-EFM**
**18-10154-01-EFM**
**18-10155-01-EFM**

---

# PLEA AGREEMENT

---

The United States of America, by and through United States Attorney, Stephen R. McAllister, and Tyler R. Barriss, the defendant, personally and by and through his counsel, Rich Federico, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1.  **Defendant's Guilty Plea.** The defendant agrees to plead guilty to charges filed in the District of Kansas (Counts One, Two and Twelve of the Superseding Indictment), and to charges filed in the District of Columbia (Counts One and Two of the Indictment) and the Central District of California (Counts One through Forty-Six of the Information), with those out-of-district charges having been transferred to the District of

Kansas for plea pursuant to Federal Rule of Criminal Procedure 20. The charges are specifically described in Attachment A to this Plea Agreement. By entering into this plea agreement, the defendant admits to knowingly committing the offenses, and to being guilty of the offenses. The defendant understands that the maximum sentences which may be imposed as to these offenses are outlined in Attachment A to this Plea Agreement. The defendant further agrees to abandon certain property to the United States, as agreed.

2.     **Factual Basis for the Guilty Plea.**   The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

**(a)     The Kansas Case --**

The defendant, Tyler R. BARRISS, later learned that during the evening of December 28, 2017, in the District of Kansas and elsewhere, co-defendants Casey VINER and Shane GASKILL played Call of Duty World War II – an on line game – together but from different physical locations. Defendant BARRISS believes that at the time co-defendant GASKILL played from Kansas, and co-defendant VINER from Ohio.

Co-defendant VINER became upset by events that occurred during the game, events that he blamed on co-defendant GASKILL. The co-defendants argued via electronic communications, and co-defendant VINER remained upset.

Co-defendant VINER then contacted the defendant through electronic communications and asked the defendant to "swat" co-defendant GASKILL at an address that co-defendant GASKILL previously provided to co-defendant VINER, which was 1033 W. McCormick Street, Wichita, KS 67217. This address was not co-defendant GASKILL's true address, but the defendant did not know that at the time.

The defendant followed co-defendant GASKILL on Twitter, researching and verifying that the address provided by co-defendant VINER was, in fact, the address for a residence. The defendant admits that he also identified a telephone number for the Wichita, Kansas, Police Department.

Co-defendant GASKILL noticed that the defendant was following him on Twitter. Co-defendant GASKILL then began communicating with the defendant through direct electronic messages.

At approximately 6:10 or 6:11 p.m., the defendant (while located in California) began a series of telephone calls to the Wichita Police Department (WPD)'s downtown security desk in Wichita, Kansas. To disguise his identity, the defendant acquired an assigned telephone number from TextNow so it appeared to Wichita emergency personnel (with caller id) that the defendant was using a telephone with a "316" area code, the area code that includes Wichita, Kansas.

The defendant made telephone calls to the WPD, at 6:10 or 6:11 p.m., 6:15 or 6:16 p.m., and 6:17 p.m. During one of these calls, the defendant identified himself as "Brian" to the WPD security officer who answered the phone. According to the security officer, "Brian" asked if the number he called was the police department, then reported that his mother struck his father with a gun. The security officer put the defendant on hold and attempted to transfer each call to the 9-1-1 system operated by Sedgwick County Emergency Communications (County). The only successful transfer occurred with the 6:17 p.m. telephone call.

At approximately 6:18 p.m., a County employee (dispatcher) received the call transferred from the WPD. The dispatcher asked the caller for the location of the emergency. The defendant stated that he was at 1033 W. McCormick where "I [he] just shot my dad in the head 'Cause he was arguing with my mom and it was getting way out of control." The dispatcher asked the defendant to confirm the address, which the defendant did, as well as adding that it was a house and he was holding his mother and brother at gunpoint "in a closet right now" to ensure they not go anywhere. The defendant identified himself as "Ryan" and he eventually stated "I didn't really mean to kill my dad." The dispatcher asked the defendant if he could see his dad "right now." The defendant said yes, his dad was "on the floor dead" and "not breathing." Soon thereafter, the defendant informed the dispatcher that he was considering lighting the house on fire before committing suicide. This call eventually disconnected, but the dispatcher was unable to call the defendant back because the dispatcher had not been able to obtain the number from caller ID (the number did not show up after the call was transferred by the WPD security officer).

3

The defendant later learned that the County dispatched a response team of law enforcement officers to 1033 W. McCormick Street as a direct result of the defendant's telephone call. These officers initially believed they were responding to a self-inflicted shooting. Shortly thereafter, dispatch notified the officers that this was not correct, the calling party reported that he shot his dad in the head and that dad was not breathing. When the officers arrived in the area, they established a perimeter around 1033 W. McCormick Street. At some point thereafter, the front door opened and a man, later identified as A.F., stepped onto the front porch. At approximately 6:28 p.m., an officer fired a shot that caused the death of A.F.

At approximately 6:35 and 6:37 p.m. the defendant (who at the time was unaware of the shooting) called the WPD security officer again. During one of the calls, the WPD security officer asked the defendant for his name and phone number. The defendant provided the name "Brian" and a telephone number that started with area code "316." In the final call, the WPD security officer advised the defendant to hang up so the County dispatcher could call him. The WPD security officer provided the "316" telephone number to the County dispatcher.

The defendant admits that no one named "Ryan" or "Brian" lived at 1033 W. McCormick on December 28, 2017, to the best of his knowledge and information. No one had been shot inside the house, no hostages were being held, and there was no gasoline poured all over the house, nor was anyone inside threatening suicide. The defendant made false allegations and statements to the WPD and the Sedgwick County Emergency Communications in phone calls that occurred between the hours of 6:10 p.m. and 6:39 p.m. for the purpose "swatting" co-defendant GASKILL who the defendant believed lived at 1033 W. McCormick, Wichita, Kansas.

To make these false telephone calls to the WPD and the County on December 28, 2017, the defendant admits that he utilized interstate electronic communication services.

To communicate with co-defendants VINER and GASKILL on December 28, 2017, the defendant admits they utilized interstate electronic communication services.

The defendant admits that his communications with co-defendant VINER constituted an agreement (A) to convey false and misleading information in violation of the provisions of Title 18, United States Code, Section 1038,

4

(B) to knowingly and willfully transmit in interstate commerce a communication in violation of the provisions of Title 18, United States Code, Section 875(c), and (C) to use electronic facilities of interstate commerce in violation of the provisions of Title 18, United States Code, Section 2261A, and that he or co-defendant VINER committed at least one act to effect the object of the conspiracy. Specifically, the defendant admits that he or co-defendant VINER did the following, and that any one of these acts constitutes an overt act in furtherance of the conspiracy –

(i) co-defendant VINER requested that the defendant swat co-defendant GASKILL;

(ii) the defendant agreed to swat co-defendant GASKILL;

(iii) co-defendant VINER provided an address for co-defendant GASKILL (1033 W. McCormick Street, Wichita, Kansas) and co-defendant GASKILL's user name to the defendant;

(iv) the defendant researched a telephone number for the Wichita Police Department, located in Wichita, Kansas;

(v) the defendant researched the McCormick Street address;

(vi) the defendant disguised his telephone number to make it falsely appear he was calling from a number starting with a 316 area code;

(vii) the defendant placed at least one telephone call to the Wichita Police Department, located in Wichita, Kansas;

(viii) the defendant conveyed false information about himself and events to an employee of the Wichita Police Department at least once;

(ix) the defendant participated in at least one telephone call with Sedgwick County Emergency Communications, located in Wichita, Kansas;

(x) the defendant conveyed false information about himself and events occurring at the McCormick Street address to an employee of Sedgwick County Emergency Communications at least once.

The defendant acknowledges and admits that his actions, outlined above, resulted in the death of another person, A.F., who was living in the District of Kansas at the time of A.F.'s death.

5

**(b)   The District of Columbia case –**

On December 14, 2017, the defendant while physically located in California used a telephone to call in a threat to the Federal Communications Commission (FCC) in the District of Columbia. Specifically, the defendant reported that a bomb was located in the headquarters of the FCC when the defendant knew that there was no bomb at the FCC headquarters and that this threat was, in fact, false. The defendant conveyed the false bomb threat with an intent to intimidate people at the FCC headquarters in the District of Columbia. The defendant realizes and admits that his conduct and this threat affected interstate commerce.

On December 22, 2017, the defendant while physically located in California used a telephone to call in a threat to the J. Edgar Hoover Building, headquarters of the Federal Bureau of Investigation (FBI), in the District of Columbia. Specifically, the defendant reported that a bomb was located in the headquarters of the FBI when the defendant knew that there was no bomb in the FBI's headquarters and that this threat was, in fact, false. The defendant conveyed the false bomb threat with an intent to intimidate people at the FBI's headquarters in the District of Columbia. The defendant realizes and admits that his conduct and this threat affected interstate commerce.

**(c)   The Middle District of California's case –**

The defendant admits that the factual basis for Counts One through Forty-Six of the Information in Case No. 18-10154-EFM is contained in Attachment B to this Plea Agreement.

3.   **Proposed Rule 11(c)(1)(C) Sentence.**   The parties propose, as an appropriate disposition of the case:

(a)   a controlling sentence that is no less than 240 months (20 years) and no more than 300 months (25 years) in prison for Counts One, Two and Twelve of the Superseding Indictment in District of Kansas Case Number 18-10065, Counts One and Two of the Indictment in District of Columbia Case Number 18-10155-EFM, and Counts One through

6

Forty-Six of the Information in Central District of California Case Number 18-10154-EFM, all charges more specifically described in Attachments A and B;

     (b)     five years of supervised release;

     (c)     restitution in the amount of $5,000.00 payable to the Kansas Crime Victims Compensation Fund;

     (d)     no fine; and

     (e)     the mandatory special assessment of $100.00 per count of conviction (a total of $5,100.00).

The parties seek this binding plea agreement as an appropriate disposition of these cases, because if the Court agrees to be bound by the proposed sentence, the result will bring certainty to the sentencing process; assure that the defendant and the government will benefit from the bargain they have struck; serve the interests of justice; and assure a sentence consistent with the sentencing factors of 18 U.S.C. § 3553(a). If the Court does not agree with the sentence, the defendant and United States may be restored to the positions they maintained prior to reaching this plea Agreement. This plea agreement is premised and founded upon on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable resources of the Court, prosecution, defense, United States Probation Office, and the United States Marshals' Service.

4.    **Application of the Sentencing Guidelines.**    The parties believe the proposed sentence does not offend the advisory sentencing guidelines. Because the proposed sentence is sought pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

5.    **Government's Additional Agreements.**    In return for the defendant's plea of guilty as set forth herein, the United States agrees to the following:

(a)    To dismiss the remaining counts of the Indictment and Superseding Indictment filed in District of Kansas Case Number 18-10065-01-EFM at the time of sentencing, and agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictments (Districts of Kansas and Columbia), Superseding Indictment (District of Kansas) and Information (Central District of California). Specifically, the United States will dismiss Counts One through Twelve in the Indictment (Doc. 1) and Counts Three through Eleven of the Superseding Indictment in Case Number 18-10065-01-EFM (Doc. 32); and

(b)    To contact any state officials with pending detainers against the defendant to notify them about the terms of this Plea Agreement and request that the state remove the detainer.

6.    **Defendant's Additional Agreement.**    At least thirty (30) days prior to sentencing, the defendant agrees to provide to the United States Attorney's Office letters of apology to the family of A.F., the Wichita Police Department and Sedgwick County Emergency Communications. If, in the opinion of the United States Attorney, the letters

8

demonstrate true remorse on the part of the defendant, an acknowledgement about what the defendant's conduct put each law enforcement officer through and acknowledgement of guilt to an exceptional degree, the United States will acknowledge the defendant's acceptance of responsibility as a mitigating factor and not seek the maximum term of imprisonment under the agreement. It is understood by the parties that these letters must be written by the defendant, Tyler Barriss, as an expression of his true and sincere thoughts, feelings and beliefs.

7.    **Consequences for Violating the Plea Agreement.**  The United States' obligations under this plea agreement are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct not previously know or disclosed to the Government, the United States reserves the right to petition the Court for a hearing to determine if the defendant has breached this plea agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this plea agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this plea agreement's terms, this plea agreement will be deemed null and void, and the United

9

States may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this plea agreement, the defendant understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this plea agreement.

8. **Whether to Accept the Proposed Plea Agreement and Sentence is the Court's Sole and Exclusive Decision.** The Court has no obligation to accept the proposed plea agreement and sentence. It is solely within the Court's discretion whether to accept the proposed plea agreement as an appropriate disposition of the case.

9. **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.** If the Court agrees to be bound by the proposed plea agreement and sentence, the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea. If the Court announces that it will NOT be bound by the proposed plea agreement, the parties agree that at that time either party may withdraw from the proposed plea agreement, and if either party does so, then all parties will be restored to the positions they

10

were in prior to the entry of the defendant's plea. If neither party elects to withdraw from

the proposed plea agreement at the time the Court announces that it will not be bound, and

before the Court proceeds with sentencing, then the parties shall be bound by all the terms

of the proposed plea agreement and the defendant will not be permitted to withdraw his

guilty plea.

10. **Identification of Assets and Agreement Concerning Monetary Penalties**

**(Restitution, Fines, Assessments) and Forfeiture.**   The defendant agrees to cooperate

fully with the United States Attorney's Office and specifically agrees as follows:

(a)   Defendant agrees to execute a financial statement provided by the United States Attorney's Office and to update the statement with any material changes within 30 days of any such change. Defendant further agrees to provide all supporting documentation, including, but not limited, to copies of federal tax returns. The defendant agrees to disclose all assets in which defendant has any interest or which defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, as well as any transfer of assets that has taken place within six years preceding the entry of the judgment in this criminal case. Additionally, the defendant agrees to periodically execute an updated financial statement at the request of the United States Attorney's Office until such time the judgment debt is paid in full.

(b)   Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. Defendant agrees the United States Attorney's Office may subpoena any records it deems relevant to conduct a full financial investigation. Defendant agrees to discuss or answer any questions by the United States relating to its financial investigation.

(c)     Defendant agrees to submit to an examination prior to and/or after sentencing, which may be taken under oath, and/or may include a polygraph examination.

(d)     Defendant agrees that any waivers, consents, or releases executed for the United States Probation Office for purposes of preparation of the Presentence Report may be provided to the United States Attorney's Office. All information defendant provided to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office.

(e)     Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control, without written approval from the United States Attorney's Office.

(f)     Defendant agrees that whatever monetary penalties the Court imposes (including any fine, restitution, assessment, or forfeiture judgment), will be due and payable immediately and subject to immediate enforcement by the United States. Should the Court impose a schedule of payments, he agrees that the schedule of payments is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If defendant is incarcerated, defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

(g)     If defendant posted funds as security for defendant's appearance in this case, defendant authorizes the Court to release the funds to the Clerk of the United States District Court to be applied to the criminal monetary impositions at the time of sentencing.

(h)     Defendant waives any requirement for demand of payment on any restitution, fine, assessment, or forfeiture judgment entered by this Court.

(i)     Defendant agrees to notify the United States Attorney's Office within 30 days of any change of address or other contact information until the judgment debt is paid in full.

(j)     Defendant agrees the terms of this agreement shall be incorporated into the Judgment in a Criminal Case.

(k)     Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default, and agrees to be immediately included in the Treasury Offset Program allowing federal benefits and payments to be offset and applied to the balance of criminal monetary penalties.

(l)     Defendant agrees that noncompliance with any of the terms set forth in this paragraph will result in a continuance of the sentencing hearing.

11.     **Restitution.**   The defendant knowingly and voluntarily agrees and consents

to the following:

(a)     The defendant agrees that the total amount of restitution reflected in this Plea Agreement results from the defendant's criminal conduct.

(b)     The defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, which it may do as a condition of supervised release, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

(c)     The defendant agrees to send all payments made pursuant to the Court's restitution order to the Clerk of the Court at the following address:

> Clerk, U.S. District Court
> 401 N. Market, Room 204
> Wichita, Kansas 67202

(d)     With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, the defendant will provide the following information:

(i)   The defendant's name and Social Security number;

(ii)  The District Court and the docket number assigned to this case;

13

(iii) A statement that the payment is being submitted pursuant to the District Court's restitution order.

12. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

13. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed in accordance with the sentence recommended by the parties under Rule 11(c)(1)(C). The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)),

14

or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the

defendant waives the right to appeal the sentence imposed in this case, except to the extent,

if any, the Court imposes a sentence in excess of the sentence recommended by the parties

under Rule 11(c)(1)(C). However, if the United States exercises its right to appeal the

sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from

this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a).

Notwithstanding the foregoing waivers, the parties understand that the defendant in no way

waives any subsequent claims with regards to ineffective assistance of counsel or

prosecutorial misconduct.

14.    **FOIA and Privacy Act Waiver.**   The defendant waives all rights, whether

asserted directly or by a representative, to request or receive from any department or agency

of the United States any records pertaining to the investigation or prosecution of this case,

including, without limitation, any records that may be sought under the Freedom of

Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under

the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records

or materials pertaining to this case.

15.    **Full Disclosure by United States.**   The defendant understands the United

States will provide to the Court and the United States Probation Office all information it

deems relevant to determining the appropriate sentence in this case. This may include

information concerning defendant's background, character, and conduct, including the

entirety of his criminal activities. The defendant understands these disclosures are not

15

limited to the counts to which he is pleading guilty. The United States may respond to comments the defendant or his attorney makes, or to positions defendant or his attorney take, and to correct any misstatements or inaccuracies. The United States further reserves the right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to limitations set forth in this plea agreement. The defendant also has the right to provide information concerning the offenses and to make recommendations to the Court and the United States Probation Office.

16.     **Parties to the Agreement.**   The defendant understands this plea agreement binds only him and the United States Attorneys for the District of Kansas, the District of Columbia, and the Central District of California, and that it does not bind any other federal, state, or local prosecution authority.

17.     **No Other Agreements.**   The defendant has had a full opportunity and sufficient time to discuss this case, the evidence, and this plea agreement with his attorney and defendant is fully satisfied with the advice and representation his attorney has provided. Further, the defendant acknowledges that he has read the plea agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this plea agreement supersedes any and all other agreements, discussions or negotiations between the parties, and that this plea agreement embodies each and every term of the agreement between the parties.

16

18.   **Defendant Acknowledges His Guilt and the Voluntariness of His Plea.**

The defendant acknowledges that he is entering into this plea agreement and is

pleading guilty because he is guilty. He further acknowledges that he is entering his guilty

plea freely, voluntarily, and knowingly.


Date: 11-13-2018

Stephen R. McAllister
United States Attorney
United States Attorney's Office
301 N. Main, Suite 1200
Wichita, Kansas 67202
316-260-6481
K.S.Ct.No. 15845


Date: 11-13-18

Tyler R. Barriss
Defendant


Date: 11/13/2018

Rich Federico
Assistant Federal Public Defender
Counsel for Defendant Barriss

17

## Attachment A

**I.     Case No. 18-10065-01-EFM (Kansas) --**

**Count 1 (False Information and Hoaxes in violation of 18 U.S.C. § 1038):**  A term of imprisonment of any number of years up to life, and/or a fine not to exceed $250,000.00, a term of supervised release of not more than five (5) years, and a special assessment of not less than $100.00 per count of conviction (18 U.S.C. § 3013).

**Count 2 (Cyberstalking in violation of 18 U.S.C. § 2261A):**  A term of imprisonment of life or any number of years, and/or a fine not to exceed $250,000.00, a term of supervised release of not more than five (5) years, and a special assessment of not less than $100.00 per count of conviction (18 U.S.C. §§ 2261 and 3013).

**Count 12 (Conspiracy in violation of 18 U.S.C. § 371):**  A term of imprisonment not more than five (5) years, and/or a fine not to exceed $250,000.00, a term of supervised release not more than one (1) year, and a special assessment of not less than $100.00 per count of conviction (18 U.S.C. § 3013).

**II.     Case No. 18-10154-01-EFM (Central District of California) –**

**Counts 1 - 3, 5 - 7, 9 - 18, 21, 24 - 31, 33 - 36, 40 - 42, 44 (Threatening to Kill Another or Damage Property by Fire in violation of 18 U.S.C § 844)**  A term of imprisonment of not more than ten (10) years, and/or a fine not to exceed $250,000.00, a term of supervised release of not more than three (3) years, and a special assessment of not less than $100.00 per count of conviction (18 U.S.C. § 3013).

**Counts 4, 8, 19, 20, 22, 23, 32, 45, 46 (Interstate Threats in violation of 18 U.S.C. § 875):**  A term of imprisonment of not more than five (5) years, and/or a fine not to exceed $250,000.00, a term of supervised release of not more than one (1) year, and a special assessment of not less than $100.00 per count of conviction (18 U.S.C. § 3013).

**Count 37 (Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349):** A term of imprisonment of not more than 30 years, and/or a fine not to exceed $1,000,00.00, a term of supervised release not more than five (5) years, and a special assessment of not less than $100.00 (18 U.S.C. § 3013).

**Count 38, 39, 43 (Conspiracy in violation of 18 U.S.C. § 371):**  A term of imprisonment not more than five (5) years, and/or a fine not to exceed $250,000.00, a term of supervised release not more than one (1) year, and a special assessment of not less than $100.00 per count of conviction (18 U.S.C. § 3013).

**III.    Case No. 18-10155-JWB (District of Columbia) --**

**Counts One and Two (Threatening to Kill Another or Damage Property by Fire in violation of 18 U.S.C § 844):** A term of imprisonment of not more than ten (10) years, and/or a fine not to exceed $250,000.00, a term of supervised release of not more than three (3) years, and a special assessment of not less than $100.00 per count of conviction (18 U.S.C. § 3013).

## **Attachment B**

### *A.     Introductory Facts*

Twitter is an online social networking service on which users post and interact with messages known as tweets.  Twitter users also can send Direct Messages to one another.

A Twitter "handle" is the name a user selects to use on Twitter.

Defendant  TYLER  RAI  BARRISS  ("defendant"),  also  known  as  ("aka") "@SWAUTISTIC," aka "Robert Hayward," aka "Robert," aka "Alex Mendez," aka "Alex," aka "Matthew," aka "Aaron," resided in, and was located in, Los Angeles County within  the  Central  District  of  California.  Defendant  used  the  Twitter  handle @SWAUTISTIC.

Unindicted Co-Conspirator No. 1 resided in, and was located in, Des Plaines, Illinois.  Unindicted Co-Conspirator No. 1 used the Twitter handle @INTERNETLORD.

Unindicted Co-Conspirator No. 2 resided in, and was located in, Gulf Breeze, Florida.  Unindicted Co-Conspirator No. 2 used the Twitter handle @TRAGIC.

Unindicted Co-Conspirator No. 3 resided in, and was located in, Grand Rapids, Michigan.  Unindicted Co-Conspirator No. 3 used the Twitter handle @THROW.

Unindicted Co-Conspirator No. 4 resided in, and was located in, Greenwood, Missouri.  Unindicted Co-Conspirator No. 4 used the Twitter handle @SPARED.

Waukesha State Bank was a financial institution insured by the Federal Deposit Insurance Corporation.

"Swatting" is the action or practice of harassing a victim by deceiving an emergency service into sending a police and emergency service response teams to the victim's address, often by making a false report of a serious law enforcement emergency – such as a murder or hostage situation – at the victim's address to trigger the deployment of the response team.

### B.     The Hoax Calls

#### 1.     September 24, 2015 – High School in Beaver Creek, Ohio

On or about September 24, 2015, in Los Angeles County, within the Central District of California, defendant by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Beaver Creek Police Department in Beaver Creek, Ohio, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that bombs were planted at a high school in Beaver Creek and that those bombs were set to explode.

#### 2.     September 29, 2015 – High School in Keene, New Hampshire

On or about September 29, 2015, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Keene Police Department in Keene, New Hampshire, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that bombs were planted at a high school in Keene and that those bombs were set to explode.

#### 3.     Late September 2015 – A School

On or about late September 2015, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Clark County School District Police Department in Henderson, Nevada, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property

by means of fire and an explosive, namely, and in substance and effect, that bombs were planted at a school and that those bombs were set to explode.

### 4. October 1, 2015 – A Residence in Ipswich, Massachusetts

On or about October 1, 2015, in Los Angeles County, within the Central District of California, defendant, with the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate commerce through a voice-over-internet service provider to the Ipswich Police Department in Ipswich, Massachusetts, a communication containing true threats to injure the person of another, namely, and in substance and effect, that he was named "Matthew," that he had just murdered his girlfriend, and that he intended to go to the Ipswich Police Department and kill officers and himself.

### 5. October 5, 2015 – A College in Glen Ellyn, Illinois

On or about October 5, 2015, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the DuPage University Police Department in Glen Ellyn, Illinois, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he was named "Alex Mendez" and that bombs were planted at a college in Glen Ellyn and that those bombs were set to explode.

### 6. October 7, 2015 – A University in Chicago, Illinois

On or about October 7, 2015, in Los Angeles County, within the Central District of California, defendant TYLER RAI BARRISS, also known as ("aka") "@SWAUTISTIC," aka "Robert Hayward," aka "Robert," aka "Alex Mendez," aka "Alex," aka "Matthew," aka "Aaron," by a telephone and other instrument of commerce, willfully made a threat,

3

and maliciously conveyed false information knowing the information to be false, to the University of Illinois-Chicago Police Department in Chicago, Illinois, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he was named "Alex Mendez" and that bombs were planted at a university in Chicago.

### 7.    October 8, 2015 – A University in DeKalb, Illinois

On or about October 8, 2015, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Northern Illinois University Police Department in DeKalb, Illinois, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that bombs were planted at a university in DeKalb and that those bombs were set to explode.

### 8.    September 26, 2017 – South Elm Street, Washington, Illinois

On or about September 26, 2017, in Los Angeles County, within the Central District of California, defendant, with the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate commerce through a voice-over-internet service provider to the Washington Police Department in Washington, Illinois, a communication containing true threats to injure the person of another, namely, and in substance and effect, that he was named "Alex," that he had just shot two people at a home on South Elm Street in Washington, that he was high on methamphetamine, and that he was armed with an assault rifle. In response to this information, Washington Police Department officers went to the home and ordered its only occupant to exit the building.

### 9.      September 26, 2017 – Shopping Center in Layton, Utah

On or about September 26, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Layton Police Department in Layton, Utah, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he had planted bombs at a shopping center in Layton and that those bombs were set to explode. In response to this information, law enforcement, including a K-9 unit from a nearby Air Force Base, evacuated the shopping center and searched it for explosives.

### 10.      September 27, 2017 – High School in Peoria, Illinois

On or about September 27, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Peoria Police Department in Peoria, Illinois, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that was named "Robert Hayward," that he had planted bombs in backpacks throughout a high school, that those bombs were set to explode, and that he was at or near the high school, armed with a gun, and intended to open fire. In response to this information, law enforcement evacuated the high school and searched it for explosives.

### 11.      September 28, 2017 – Building in Richmond, Virginia

On or about September 28, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely a voice-over-internet service provider, willfully made a threat, and maliciously conveyed

false information knowing the information to be false, to the Richmond Police Department in Richmond, Virginia, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he had planted bombs in a building on West Broad Street in Richmond. In response to this information, law enforcement, including a K-9 bomb detection team, evacuated the building and searched it for explosives.

### 12.    September 28, 2017 – Building in Arlington, Virginia

On or about September 28, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Arlington Police Department in Arlington, Virginia, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he was named "Robert Hayward" and that he had planted a bomb in a building on Wilson Boulevard in Arlington. In response to this information, law enforcement went to the building to investigate.

### 13.    September 28, 2017 – Building in Houston, Texas

On or about September 28, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the West University Place Police Department in West University Place, Texas, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that a fake maintenance crew had planted bombs in a building on Bissonnet Street in Houston and that

those bombs were set to explode.  In response to this information, law enforcement went to the building to investigate.

### 14.    September 29, 2017 – Public Works Building in Phoenix, Arizona

On or about September 29, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to a television station in Phoenix, Arizona, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he had planted a bomb inside a public works building on North 23rd Avenue in Phoenix and that the bomb was set to explode. In response to this information, law enforcement went to the public works building to investigate.

### 15.    September 29, 2017 – High School in Allen, Texas

On or about September 29, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Allen Police Department in Allen, Texas, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he was named "Robert," that he had planted bombs throughout a high school in Allen, and that those bombs were set to explode. In response to this information, law enforcement went to the high school to conduct a search and security sweep.  Later that day, defendant, using his @SWAUTISTIC Twitter account, posted a tween concerning the evacuation of the high school.

7

### 16.    September 29, 2017 – University in Cambridge, Massachusetts

On or about September 29, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Harvard University Police Department in Cambridge, Massachusetts, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he was named "Robert Hayward," that he had planted bombs on a university campus and that the bombs were set to explode.  In response to this information Cambridge Police Department bomb technicians were alerted.

### 17.    September 30, 2017 – Building in Phoenix, Arizona

On or about September 30, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to a television station in Phoenix, Arizona, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he had planted bombs throughout a building located on West Adams Street in Phoenix and that those bombs were set to explode.  In response to this information, law enforcement went to the building to investigate.

### 18.    September 30 2017 – Movie Theater in Alexandria, Virginia

On or about September 30, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Alexandria Police Department

in Alexandria, Virginia, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he had planted bombs in a movie theater in Alexandria and that he was outside that theater armed with an assault rifle. In response to this information, law enforcement evacuated the theater and searched it with K-9s.

### 19.      September 30, 2017 – Residence in New London, Missouri

On or about September 30, 2017, in Los Angeles County, within the Central District of California, defendant, with the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate commerce using a voice-over-internet service provider to Marion County Emergency Services in Marion County, Missouri, a communication containing true threats to injure the person of another, namely, and in substance and effect, that he had just shot two people and planned to burn down a residence on Whitaker Lane in New London, Missouri. In response to this information, law enforcement went to the residence to investigate.

### 20.      September 30, 2017 – Residence in Hannibal, Missouri

On or about September 30, 2017, in Los Angeles County, within the Central District of California, defendant, with the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate commerce using a voice-over-internet service provider to Marion County Emergency Services in Marion County, Missouri, a communication containing true threats to injure the person of another, namely, and in substance and effect, that he was named "Robert Hayward," and that he had just shot two people at a residence on Walnut Street in Hannibal, Missouri. In response to this information, law enforcement went to the residence to investigate.

### 21.    October 2, 2017 – High School in Center, Missouri

On or about October 2, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to Marion County Emergency Services in Marion County, Missouri, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he had planted bombs at a high school in Center, Missouri.   In response to this information, law enforcement evacuated and searched the high school.

### 22.    October 2, 2017 – Residence in Washington, Illinois

On or about October 2, 2017, in Los Angeles County, within the Central District of California, defendant, with the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate commerce using a voice-over-internet service provider to the Washington Police Department in Washington, Illinois a communication containing true threats to injure the person of another, namely, and in substance and effect, that he had just killed two people at a residence on South Wood Street in Washington, that he had an assault rifle, and that he would kill any law enforcement officer that approached the residence.

### 23.    October 2, 2017 – Hotel in Las Vegas, Nevada

On or about October 2, 2017, in Los Angeles County, within the Central District of California, defendant, with the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate commerce using a voice-over-internet service provider to the Las Vegas Police Department in Las Vegas, Nevada, a communication containing true threats to injure the person of another, namely, and in substance and effect, that he had shot his wife at a hotel in Las Vegas and intended to shoot other hotel guests.

### 24.     October 4, 2017 – High School in Center, Missouri

On or about October 4, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to emergency services in Ralls County, Missouri, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that bombs were planted at a high school in Center, Missouri.

### 25.     November 2, 2017 – University in Morgantown, West Virginia

On or about November 2, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the West Virginia University Police Department in Morgantown, West Virginia, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he had planted bombs on a university campus, that he had an assault rifle, and that he intended to open fire on students.  In response to this information, law enforcement searched the university campus using K-9s.

### 26.     November 9, 2017 – Television Station in Portland, Maine

On or about November 9, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Portland Police Department in Portland, Maine, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an

explosive, namely, and in substance and effect, that he was named "Robert," that he had placed bombs around a television station in Portland.  In response to this information, law enforcement evacuated and searched the television station.

### 27.   November 10, 2017 – Television Station in Dedham, Massachusetts

On or about November 10, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Dedham Police Department in Dedham, Massachusetts, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he worked with the designated terrorist organization known as the Islamic State of Iraq and the Levant, also known as ISIS, that he had planted bombs on and around a television station located on Fox Drive in Dedham, and that the bombs were set to explode.  In response to this information, law enforcement evacuated the television station during a live broadcast and searched the television station with K-9s.

### 28.   November 10, 2017 – Building in Chicago, Illinois

On or about November 10, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Chicago Police Department in Chicago, Illinois, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he was named "Robert Hayward," that he was an agent of the designated foreign terrorist organization known as the Islamic State of Iraq and the Levant, otherwise known as ISIS, and that he had planted

a bomb in a building on North State Street in Chicago.  In response to this information, the Chicago Police Department bomb detection unit cleared the area and searched it with a K-9 team.

### 29.    November 11, 2017 – Museum in Philadelphia, Pennsylvania

On or about November 11, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Philadelphia Police Department in Philadelphia, Pennsylvania, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that bombs were planted at a museum in Philadelphia.

### 30.    November 19, 2017 – Apartment Complex in Austin, Texas

On or about November 19, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Austin Police Department in Austin, Texas, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he was named "Robert Hayward, that he had left backpacks containing dynamite at an apartment complex on Farm to Market Road in Austin and that the dynamite was set to explode, that he had an assault rifle, and that he planned to open fire on any law enforcement that approached him.  In response to this information, law enforcement shut down roads leading to the apartment complex and deployed two-man teams and a helicopter to search the area.

**31.     November 24, 2017 – Shopping Center in Bernalillo, New Mexico**

On or about November 24, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Bernalillo Police Department in Bernalillo, New Mexico, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, there were bombs planted at a shopping center in Bernalillo.

**32.     November 24, 2017 – Shopping Center in Dallas, Texas**

On or about November 24, 2017, in Los Angeles County, within the Central District of California, defendant, with the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate commerce using a voice-over-internet service provider to the Dallas Police Department in Dallas, Texas, a communication containing true threats to injure the person of another, namely, and in substance and effect, that he intended to engage in violent acts toward persons at a shopping center in Dallas.

**33.     November 24, 2017 – Shopping Center in Valley Stream, New York**

On or about November 24, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Nassau County Police Department in Nassau County, New York, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that there were bombs at shopping center in Valley Stream, New York.

### 34.    November 24, 2017 – Shopping Center in Michigan City, Indiana

On or about November 24, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Michigan City Police Department in Michigan City, Indiana, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that there were bombs at a Michigan City shopping center.

### 35.    November 28, 2017 – High School in Panama City Beach, Florida

On or about November 28, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Panama City Beach Police Department in Panama City Beach, Florida concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he had planted bombs at a high school in Panama City Beach, that the bombs were set to explode, and that he and another person were at the school, armed with guns.  In response to this information, law enforcement evacuated the high school.

### 36.    November 28, 2017 – High School in Durand, Michigan

On or about November 28, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Durand Area Schools in Durand, Michigan, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an

15

explosive, namely, and in substance and effect, that he was named "Robert," that he had planted bombs at a high school and that those bombs were set to explode. In response to this information, law enforcement, including a K-9 team, searched the high school.

### 37.    December 11, 2017 – Mall in Lake Grove, New York

On or about December 11, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Suffolk County Police Department in Smithtown, New York, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he and a friend had planted bombs at a mall in Lake Grove, New York, that those bombs were set to explode, and that he and others were armed with assault weapons and planned to open fire at the mall. In response to this information, law enforcement initiated their emergency service and active shooter response protocols.

### 38.    December 14, 2017 – Secondary School in Burke, Virginia

On or about December 14, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the George Mason University Police Department in Fairfax County, Virginia, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he was named "Robert," that he was high on methamphetamine and Xanax, had planted dynamite at a secondary school in Burke, Virginia, and that the dynamite was set to explode. In response to this information, law enforcement searched the middle school.

### 39.   December 17, 2017 – Mall in Lake Grove, New York

On or about December 17, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to a mall in Lake Grove, New York, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he and a friend had planted bombs at the mall and that those bombs were set to explode.

### 40.   December 19, 2017 – A High School in Lee's Summit, Missouri

On or about December 19, 2017, in Los Angeles County, within the Central District of California, defendant, by a telephone and other instrument of commerce, namely, a voice-over-internet service provider, willfully made a threat, and maliciously conveyed false information knowing the information to be false, to the Lee's Summit Police Department in Lee's Summit, Missouri, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, namely, and in substance and effect, that he had planted a bomb at a high school and that the bomb was set to explode.

### 41.   December 22, 2017 – A Person in Calgary, Canada

On or about December 22, 2017, in Los Angeles County, within the Central District of California, defendant, with the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate commerce using a voice-over-internet service provider to Calgary emergency services in Calgary, Canada, a communication containing true threats to injure the person of another, namely, and in substance and effect, that he had shot a person and was holding two others as hostages.

### 42.   December 26, 2017 – A Person in San Antonio, Texas

On or about December 26, 2017, in Los Angeles County, within the Central District of California, defendant, with the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, knowingly transmitted in interstate commerce using a voice-over-internet service provider to the San Antonio Police Department in San Antonio, Texas, a communication containing true threats to injure the person of another, namely, and in substance and effect, that he was named "Aaron," that he had shot his mother, and that he intended to harm others.

### C.   *The Conspiracy to Commit Bank Fraud*

Beginning no later than November 27, 2017, and continuing through on or about December 5, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant and Unindicted Co-Conspirator No. 1 knowingly combined, conspired, and agreed to commit bank fraud, in violation of Title 18, United States Code, Section 1344(2).

The object of the conspiracy was to be carried out, and was carried out, in substance as follows:  Unindicted Co-Conspirator No. 1 would obtain credit and debit card account numbers that he knew belonged to real persons.  Unindicted Co-Conspirator No. 1 would use those unauthorized debit and credit card account numbers to purchase clothing and other items online for, and at the request of, defendant.  In purchasing those items, Unindicted Co-Conspirator No. 1 would falsely represent to online retailers that he was authorized to use those credit and debit card account numbers to make purchases, when, in fact, he was not authorized to do so.

Specifically, defendant and Unindicted Co-Conspirator No. 1 committed and caused others to commit various overt acts within the Central District of California, and elsewhere, including the following:

On or before November 27, 2017, Unindicted Co-Conspirator No. 1 opened an account with a virtual private network service provider (the "VPN Service").

On December 1, 2017, Unindicted Co-Conspirator No. 1 attempted to purchase a 1-month subscription to the VPN Service with a credit card number that he knew belonged to a real person and that he was not authorized to use.

On or about December 2, 2017, in Twitter Direct Messages, defendant asked Unindicted Co-Conspirator No. 1 to purchase a cap bearing a NASA logo (the "NASA cap") for defendant.

On or about December 3, 2017, in Twitter Direct Messages, defendant again asked Unindicted Co-Conspirator No. 1 to purchase the NASA cap for him.  Unindicted Co-Conspirator No. 1 agreed to make the purchase after obtaining credit and debit card account numbers belonging to others that he knew he was not authorized to use.

On December 3, 2017, and again on December 4, 2017, in Twitter Direct Messages, defendant repeatedly insisted that Unindicted Co-Conspirator No. 1 purchase the NASA cap for him and provided Unindicted Co-Conspirator No. 1 with defendant's mailing address in Los Angeles.

On or before December 4, 2017, Unindicted Co-Conspirator No. 1 obtained a debit card account number (the "Account Number"), which he knew belonged to Victim J.B., which was linked to her checking account at Waukesha State Bank.

On or about December 4, 2017, Unindicted Co-Conspirator No. 1 purchased the NASA cap from an online retailer, using the unauthorized Account Number.  Unindicted Co-Conspirator No. 1 represented to the online retailer that he was authorized to use the Account Number to make the purchase when, in fact, he was not.  Unindicted Co-Conspirator No. 1 provided the online retailer with defendant's name and address in Los Angeles for shipping purposes.

On or about December 4, 2017, defendant told Unindicted Co-Conspirator No. 1 that he wanted him to purchase shoes for him.

On or about December 4, 2017, Unindicted Co-Conspirator No. 1 purchased a 1-month subscription to the VPN Service, using the Account Number, knowing that he was not authorized to use that Account Number.

On or about December 5, 2017, in Twitter Direct Messages, defendant told Unindicted Co-Conspirator No. 1 that he had received the NASA cap and was thankful for it.

On or about December 6, 2017, in Twitter Direct Messages, defendant told Unindicted Co-Conspirator No. 1 that he wanted him to purchase shoes and a belt for him. He then directed Unindicted Co-Conspirator No. 1 to a website and asked him, "Can you card it[?]," which was coded language indicating his intent that Unindicted Co-Conspirator No. 1 use an unauthorized debit or card account number to make the purchase. Unindicted Co-Conspirator No. 1 responded, "yessir."

### D. The Conspiracy to Evacuate a High School in Gurnee, Illinois

Beginning no later than December 4, 2017, and continuing through on or about December 6, 2017, in Los Angeles, within the Central District of California, and elsewhere, defendant and Unindicted Co-Conspirator No. 2, knowingly combined, conspired, confederated, and agreed to, by a telephone and instrument of commerce, willfully make a threat, and maliciously convey false information knowing the information to be false, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, in violation of Title 18, United States Code, Section 844(e).

The object of the conspiracy was to be carried out, and was carried out, in substance as follows: Unidentified Co-Conspirator No. 2 would identify a school building that he wanted to evacuate while school was in session. Unidentified Co-Conspirator No. 2 would share information concerning that school with defendant, to include its address. Defendant would call the school and willfully and maliciously convey the false information that he had planted bombs at the school, knowing that information to be false. Defendant would call law enforcement and willfully and maliciously convey that he had planted bombs at the school, knowing that information to be false.

Specifically, defendant and Unindicted Co-Conspirator No. 2 committed and caused others to commit various overt acts within the Central District of California, and elsewhere, including the following:

On or about December 4, 2017, Unindicted Co-Conspirator No. 2, in Twitter Direct Messages, asked defendant to cause the evacuation of a high school in Gurnee, Illinois (the "Gurnee High School"), and defendant agreed.

On or about December 5, 2017, defendant and Unindicted Co-Conspirator No. 2 investigated the address and telephone number of the Gurnee High School, including by looking up that information online.

On or about December 5, 2017, defendant and Unindicted Co-Conspirator No. 2 investigated the address and telephone number for the Gurnee Police Department, including by looking up that information online.

On or about December 5, 2017, defendant called the Gurnee High School and told a secretary there, in substance and effect, that he left a backpack containing dynamite in the Gurnee High School and that it was set to explode.  Defendant thereby willfully made a threat, and maliciously conveyed false information knowing the information to be false, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive.

On or about December 5, 2017, defendant called the Gurnee Police Department and told a communications center operator that he had planted a bomb at the Gurnee High School and that the bomb was set to explode.  Defendant thereby willfully made a threat, and maliciously conveyed false information knowing the information to be false, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive.

On or about December 5, 2017, defendant, in Twitter Direct Messages, told Unindicted Co-Conspirator No. 2, that he had taken steps to cause an evacuation of the Gurnee High School.

On or about December 6, 2017, in Twitter Direct Messages, Unindicted Co-Conspirator No. 2 and defendant agreed to try again to cause an evacuation of the Gurnee High School.

On or about December 6, 2017, defendant called the Gurnee High School and left a voicemail on a school line in which he said that he had planted a bomb at the school. Defendant thereby willfully made a threat, and maliciously conveyed false information knowing the information to be false, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive.

On or about December 6, 2017, defendant called the Gurnee Police Department and told a communications center operator that he left a backpack containing explosives in a classroom at the Gurnee High School; that the explosives were set to explode; that he was high on crystal methamphetamine; that he was carrying a pistol; and that he was considering opening fire on students and teachers. Defendant thereby willfully made a threat, and maliciously conveyed false information knowing the information to be false, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive.

## E. The Conspiracy to Swat Victim R.S. and to Evacuate a Convention Center in Dallas, Texas

Beginning no later than December 8, 2017, and continuing through on or about December 10, 2017, in Los Angeles, within the Central District of California, and elsewhere, defendant and Unindicted Co-Conspirator No. 1, knowingly combined, conspired, confederated, and agreed to, by a telephone and instrument of commerce, willfully make a threat, and maliciously convey false information knowing the information to be false, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, in violation of Title 18, United States Code, Section 844(e).

The object of the conspiracy was to be carried out, and was carried out, in substance as follows: Unidentified Co-Conspirator No. 1 and defendant would identify a person or

22

persons that they wanted to harass, intimidate, disrupt, and annoy either by swatting them or by causing them to be evacuated from their locations. Unidentified Co-Conspirator No. 1 and defendant would investigate their intended victims, to include identifying their victims' addresses and telephone numbers and the addresses and telephone numbers of law enforcement local to those victims. Defendant would call law enforcement and maliciously convey false information, knowing that information to be false, and willfully make a threat, about explosives being present at the victim's address to cause a law enforcement response. Defendant would call the location where he believed the victim was then located and maliciously convey false information, knowing that information to be false, and willfully make a threat, about explosives being present at that location to cause its evacuation.

Specifically, defendant and Unindicted Co-Conspirator No. 1 committed and caused others to commit various overt acts within the Central District of California, and elsewhere, including the following:

On or about December 7, 2017, in Twitter direct messages, Unindicted Co-Conspirator No. 1 asked defendant to swat Victim R.S., and defendant agreed.

On or about December 7, 2017, in Twitter direct messages, Unindicted Co-Conspirator No. 1 provided defendant with what he believed to be personal identification information for Victim R.S., including Victim R.S.'s home address.

On or about December 7, 2017, defendant called the Milford Police Department in Milford, Connecticut, identified himself as Victim R.S., and provided what he believed to be the home address of Victim R.S. He also maliciously conveyed the false information, knowing that information to be false, and willfully made the threat, that he had shot his parents, that he had tied up his siblings and was intended to kill them, and that he planned to burn down his house.

On or about December 7, 2017, in Twitter direct messages, defendant told Unindicted Co-Conspirator No. 1 that he had swatted Victim R.S.

On or about December 8, 2017, in Twitter direct messages, Unindicted Co-Conspirator No. 1 provided defendant with what he believed to be the address for a

convention center in Dallas, Texas (the "Convention Center"), where a video game tournament was then occurring.

On or about December 8, 2017, in Twitter Direct Messages, Unindicted Co-Conspirator No. 1 agreed to create, and did in fact create, an account with a voice-over-internet services provider for defendant to use in making hoax phone calls to and concerning the Convention Center.

On or about December 8, 2017, defendant called both the Convention Center's administrative line and a Crime Stoppers tip line and maliciously conveyed the false information, and willfully made the threat, that he left backpacks containing explosives in the Convention Center and that they were set to explode.

On or about December 8, 2017, in Twitter direct messages, Unindicted Co-Conspirator No. 1 provided defendant with information about the evacuation of the Convention Center in response to defendant's knowingly false reports that he planted bombs there.

On or about December 10, 2017, defendant called the Dallas Police Department and said that he and a friend had left backpacks containing explosives inside the Convention Center and that they were set to explode.

On or about December 10, 2017, defendant called the Convention Center's administrative line and maliciously conveyed the false information that he had planted a bomb there. That day, the Convention Center was again evacuated.

### F.     The Conspiracy to Swat Victims P.E. and C.V.

Beginning no later than December 16, 2017, and continuing through on or about December 17, 2017, within the Central District of California, and elsewhere, defendant, Unindicted Co-Conspirator No. 3, and Unindicted Co-Conspirator No. 4 knowingly combined, conspired, confederated, and agreed to: (1) By a telephone and other instrument of commerce, willfully make a threat, and maliciously convey false information knowing the information to be false, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of

fire and an explosive, in violation of Title 18, United States Code, Section 844(e). (2) With the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, knowingly transmit in interstate commerce a communication containing true threats to injure the person of another, in violation of Title 18, United States Code, Section 875(c).

The object of the conspiracy was to be carried out, and was carried out, in substance as follows: Unindicted Co-Conspirator No. 3 and Unindicted Co-Conspirator No. 4 would identify victims that either or both of them wanted to harass, intimidate, disrupt, and annoy by swatting them. Unindicted Co-Conspirator No. 3 and Unindicted Co-Conspirator No. 4 would provide information about their victims, such as what they believed to be their victims' home addresses, to defendant. Using an online payment processor, Unindicted Co-Conspirator No. 4 would pay defendant to swat the victims. Defendant would willfully and maliciously call law enforcement and make a false report, knowing that information to be false, of a serious law enforcement emergency in order to trigger a law enforcement and emergency services response at what he believed to be the victim's home address.

Specifically, defendant, Unindicted Co-Conspirator No. 3, and Unindicted Co-Conspirator No. 4 committed and caused others to commit various overt acts within the Central District of California, and elsewhere, including the following:

On or about December 16, 2017, Unindicted Co-Conspirator No. 3 asked defendant, in Twitter Direct Messages, whether he would "do some naughty tasks 4me" in exchange for payment, to include Bitcoin, which is a peer-to-peer crypto-currency, and a Microsoft Xbox, which is a video game system.

On or about December 17, 2017, Unindicted Co-Conspirator No. 3 told Unindicted Co-Conspirator No. 4, in Twitter Direct Messages, "@SWAutistic knows a thing or 2 on naughty stuff!!hint: look at his name!!" Unindicted Co-Conspirator No. 3 also told Unindicted Co-Conspirator No. 4 that defendant charged $10 to conduct a swat.

On or about December 17, 2017, in Twitter Direct Messages with Unindicted Co-Conspirator No. 3, defendant agreed to swat Victim P.E.

25

On or about December 17, 2017, Unindicted Co-Conspirator No. 3 sought, for his own amusement, to record Victim P.E.'s reaction to the swat on a multi-party voice-over-internet communication.

On or about December 17, 2017, defendant, with the purpose of issuing a threat and with knowledge that the communication would be viewed as a threat, called the Indianapolis Metropolitan Police Department in Indianapolis, Indiana, and falsely reported, knowing the information to be false, that he had shot his father at what defendant believed to be Victim P.E.'s home address on Caval Cade Court in Avon, Indiana.

On or after December 17, 2017, Unindicted Co-Conspirator No. 4 told defendant, in Twitter Direct Messages, in substance and effect, that he had paid defendant to swat Victim P.E. and that Unindicted Co-Conspirator No. 3 was the "middle man."

On or about December 17, 2017, Unindicted Co-Conspirator No. 4 and defendant agreed that defendant would swat Victim C.V., and Unindicted Co-Conspirator No. 4 provided defendant with what he believed to be Victim C.V.'s home address on Wittekind Terrace in Cincinnati, Ohio.

On or about December 17, 2017, using an online payment processor, Unindicted Co-Conspirator No. 4 sent three payments of $10.00 each to defendant to pay him for conducting the swats of Victim P.E. and Victim C.V.

On December 18, 2017, by a telephone and other instrument of commerce, defendant willfully make a threat, and maliciously conveyed false information knowing the information to be false, to the Hamilton County Sheriff's Office Communications Center in Hamilton County, Ohio, concerning an alleged attempt being made, or to be made, to kill, injure, and intimidate an individual and to damage and destroy property by means of fire and an explosive, specifically, in substance and effect, that he had shot his father at a residence on Wittekind Terrace in Cincinnati, Ohio, that he was holding his mother and sister hostage, and that he planned to set the residence on fire.